Btjrket, J.
Plaintiff in error urges that the contract is void as to all except the one acre, for the reason that it is said to be indefinite and ambiguous, and that there is no description of the forty acres sought to be conveyed.
In Texas it is held that a grant by the owner, of a certain number of acres in a particular tract, will authorize the grantee to locate it in any part of the tract. Wofford v. McKinna, 23 Texas, 36.
In Illinois such a description is held to be so vague and uncertain as to convey no title. Shackleford v. Bailey, 35 Ill., 391; Laflin v. Herrington, 16 Ill., 304; Hughes v. Streeter, 24 Ill., 647.
*146 In this state at an early clay, courts undertook to carry out the intention of the parties, and. held that a deed conveying a certain number of acres out of a designated corner of a certain tract of land, was a good conveyance of that nufnber of acres in a square form out of the designated corner. And this was carried so far as to hold that a grant of fifty-one acres in the northeast part of a certain tract, was good as a conveyance of fiftjr-one acres in a square form in the northeast corner of the tract. Walsh v. Ringer, 2 Ohio, 327; Cunningham v. Harper, Wright, 366.
In Hay v. Storrs, Wright, 711, there was excepted out of a conveyance of a tract of land half an acre opposite where Mr. Harvey formerly resided. The exception was held good, and sufficiently definite to enable an officer to find and locate it. The court say: “There can be no doubt of the intention of the grantor to reserve to himself, bj^ exception from his deed, one-half an acre. Where does it lie? Find where Harvey lived- — if it be opposite the corner of the one hundred and thirty-four-acre tract, it lies in the corner, in a square form — if so far from the corner, that the lines of the half acre would not reach it in a square form, then a line from the centre of the residence of Harvey would be the centre of the half acre tract on the street, and the tract would be laid out in a square form by parallel lines, making that the base.”
Plaintiff in error owned three tracts of forty acres each, and by selecting the one acre upon which the well was to be drilled, he thereby designated that the forty-acre tract out of which the one acre was so selected should be the forty acres *147 to be operated under said lease in case gas or oil should be obtained.
If the number of acres contracted to be operated in case gas or oil shall be found, is the same as a subdivision of a section, say 10, 20, 40, 80 or 160 acres, it will be held that the subdivision of the section upon which the well is located, is the land intended to be operated under the lease. Otherwise the land to be operated is to be taken in a square form with the well as its centre, unless the well is so near a line of the land as to make this impossible, in which case the land to be operated will be in a square form including the well, and extending- to such line.
If gas or oil is found on adjoining lands, the tract to be operated must be ascertained in the same manner in which the half acre was ascertained in Hay v. Storrs, supra.
Next, it is urged that the contract was void, and remained so to the time of the commencement of the action, for the reason that upon its face it is without consideration. The contract is expressed to be upon the consideration thereinafter stipulated and agreed upon. There are many stipulations and agreements thereinafter contained, founded however upon the contingency that oil oi-gas be found and developed upon said premises. There is also a stipulation to the effect that if operations upon said premises be not commenced within five years that the contract shall be void. There is also an agreement that if the second party shall not commence a test oil or gas well at Rising Sun or vicinity in ninety days, that the lease should be void.
So far the stipulations and agreements are contingent, but there is a further and positive agree *148 ment, to the effect that after twenty-four months' the second party will pay to the first party the sum of fifty cents per acre per year, “to be paid out of the first moneys realized or received by said second party from the development of gas or oil.” Not from the development of gas or oil on these premises, but from the development of gas or oil generally. Such a promise made by a party in the gas or oil business, is as certain as the promise of a farmer to pay out of his next year’s crops.
But aside from this agreement to pay fifty cents per acre, the contingent stipulations and agreements, with part performance and an offer of full performance before the commencement of the action, furnish ample consideration for the contract. Grant that the parties of the second part were not originally bound to commence a test oil or gas well at Rising Sun within ninety days, j^et having commenced the well within that time at that place, and in that regard performed their part of the contract, such performance is itself a sufficient and completed consideration, and thereafter the lessor cannot be heard to aver want of consideration Performance by the party not originally bound supplies the consideration, and- thereafter, the other party is as fully and firmly bound as he would have been in case there had originally been ample consideration expressed in the contract. Fishmonger's Co. v. Robertson, 5 Man. & G., 131; Phelps v. Townsend, 8 Pick., 392; Commercial Rank v. Nolan, 7 How. (Miss.), 508; 1 Parsons on Contracts, 451.
Again, it is urged that there was a lack of performance as to the drilling of the test well at Rising Sun within ninety days.
The Circuit Court found that the test well was *149 commenced within ninety days duly drilled to completion, and the existence of oil at that point thereby ascertained, that the well was not operated, but was plugged and the casing withdrawn.
This fully complied with the terms of the contract. The lease did not stipulate for the operation of the well, and the court cannot make a better contract for the plaintiff than he made for himself. As the test well was not on plaintiff’s land, he had no interest in the profits to be derived from its operation, unless it should have been indirectly, and such indirect benefits arising from operations upon the lands of another to be available must be expressly stipulated for, as they cannot be implied.
Lastly, it is urged that under the circumstances of this case, plaintiff should have had the privilege of making a second location of the place for the drilling of the well on his land, and that as the five years had elapsed at the time of the trial, the lease had expired by its own limitation, and judgment should have been given in favor of plaintiff.
As a general rule, only one location is permitted, and we see nothing in this case to warrant a departure from this rule. The defendant had commenced acting upon the selection made, and he had a right to insist that there should be no change. If a second selection had been granted, a third might have been demanded. The Circuit Court was right in holding him to his first location.
A s to the expiration of the five years, the rule is that where a party is prevented from performing his contract by injunction wrongfully obtained, he shall at the end of the litigation have as much time in which to perform as still remained at the date of the injunction, the rights thereafter to be the *150 same as they .would have been in case no injunction had been issued. In short, the time between the issuing of the wrongful injunction, and the ending of the litigation, is not regarded,- and cannot be counted to the detriment of the enjoined party. To hold otherwise would permit a man to profit by his own wrong. This principle has been carried so far as to estop a party from availing himself of the statute of limitations. Treasurer v. Martin, 50 Ohio St., 197.
But it is urged that as defendant in error claimed the right to operate all of the three forty acre tracts in case oil or ga.s should be found, when in fact he was entitled to operate only one of them, .that he was in the wrong in his claim, and that for aught that appears, the injunction would not have been applied for, or granted in case he had claimed only forty aeres.
The findings of fact show ¡that defendant in error did not know of this interlineation as to the forty acres, and supposed that he was entitled to the whole one hundred and twenty acres, as shown by the record. Plaintiff in error had full knowledge of the fact that only forty acres were granted, and he was first in the wrong by making his claim for an injunction too broad. Had he truly stated the facts in his petition as to the forty acres, and thus called the attention of defendant to the error in the record, it is not likely that any defense would have been made, and the well would have been drilled within the five years. The litigation and consequent delay, were therefore caused by plaintiff, in knowingly and wrongfully covering too much territory by his injunction, and not by the defense thus made without knowledge of the mis *151 take in the record. There is therefore nothing to take the case out of the general rule in such cases.

Judgment affirmed.